MARY W. MERRICK *vs.* ISAAC H. PLUMLEY & others.

In an action of tort in the nature of trespass *quare clausum fregit,* the defendant set up in justification a license from the plaintiff through an agent, and offered in evidence an agreement under seal containing such a license, but executed by the agent in his own name; which, on the plaintiff's motion, was excluded as not binding on the plaintiff. The defendant was then permitted, against the plaintiff's objection, to prove a previous oral agreement on the same subject between himself and the agent within the scope of his agency. *Held,* that if the oral evidence did not vary the effect of the writing the plaintiff had no ground of exception.

Evidence that a farm, conveyed by a husband to his wife's brother and by him to her, was occupied by her and her husband, and worked by the latter, who sold produce from it, and let a small tenement belonging to it; together with her testimony that she left the matter of the quarries mostly to her husband; is sufficient to warrant a finding that it was within the scope of his authority, as agent for his wife, to dispose of the privilege of quarrying and removing stone from a ledge on the farm.

In an action of tort by a married woman for quarrying and carrying away stone from her land, evidence that she saw the stone (which was quarried within fifty rods from her dwelling-house) carried by her door from time to time during a year, knowing that the defendant supposed himself to have a license to quarry and remove it, is competent evidence of a license from her to him to do so.

TORT against the members of the building committee of the Methodist Episcopal Society in Wilbraham, for entering the plaintiff's close, and quarrying and carrying away stone therefrom. Writ dated May 25, 1867. The defendants set up in justification of their acts a direct license from the plaintiff's husband as her agent, and an implied license from her knowledge of such acts and assent thereto.

At the trial in the superior court, before *Brigham,* J., "it was admitted that the plaintiff was the owner of the close; that it was situated within fifty rods of her homestead; that all the stone there quarried by the defendants was carried by her dwelling-house, and that the defendants, before commencing to quarry and remove the stone, obtained a license therefor from Samuel F. Merrick, the plaintiff's husband, over his own signature;" and there was evidence tending to show that he "was the owner of a lot of land adjoining the premises of the plaintiff, (both lots being included in what was known as the saw-mill lot,) and on which there was also an open quarry of the same kind of stone as that on the land of the plaintiff." "There was also evidence

tending to show that the defendants commenced drawing the stone in July 1866, and continued the same without interruption or objection by the plaintiff until the commencement of this suit. The plaintiff denied this, and offered evidence to the contrary."

The defendant Plumley testified that in June 1866 he made an oral agreement with the plaintiff's husband for a right to quarry and carry away the stone in dispute, which agreement was the next day reduced to writing and signed and sealed by the plaintiff's husband and himself; and "that the written contract set out correctly the agreement between them." "The defendants' counsel then asked him to state the oral agreement. To this parol evidence the plaintiff objected. The defendants then offered to put in the written contract. The plaintiff objected; and the judge excluded the same at the plaintiff's request, and then admitted the parol evidence offered, it being also admitted on both sides that the plaintiff's husband had no authority to make a contract for her under seal. The witness testified, among other things, that by the oral agreement the defendants were allowed to quarry the stone wherever they pleased on the whole lot; also that he agreed with the plaintiff's husband to pay one hundred and twenty-five dollars and quarry stone to the same point." "The plaintiff's husband, being called, denied that he gave the defendants the right to take stone wherever they pleased on this lot, or that he made any agreement with them differing from the terms expressed in the written contract," which then "by the consent of both parties was permitted to be read to the jury as a memorandum," and in substance was as follows: "Samuel F. Merrick, of the first part, agrees to permit the said Plumley, as agent and in behalf of the building committee of the Methodist Episcopal Society, of the second part, to enter upon the premises of the said Merrick, and quarry out and obtain and cart away, from any or all of the open quarries in the lot where the saw-mill formerly stood, all the foundation stone that may be needed, and all the block or rubble stone which may be required to build and complete a stone church and chapel." according to the plans of a certain architect. "The said committee are further allowed to

occupy and use the small barn near one of the quarries above described, as a deposit for the tools." "And the said Plumley, as agent for the said committee, agrees to pay the said Merrick the sum of one hundred dollars when the walls of the main building are completed; and the committee are by this instrument bound unto the said Merrick for the faithful performance of this contract, in the payment of the considerations above named. It is understood that the said Merrick makes no reservation of any stone quarried out or uncovered in the said lot, and it is further agreed that, if the said committee or their agent shall find it necessary to take any stone which the said Merrick has designated as specially reserved, then and in that case the said committee or their agent shall pay to the said Merrick the further sum of twenty-five dollars when the entire walls are completed. It is further understood that the committee have full permission to use the stone either in blocks or rubble, or both, as they may choose." This was signed by Samuel F. Merrick and the defendant Plumley with their individual names only, and sealed; and appended to it was the following sentence, signed in like manner: "It is intended to lay a wall in style similar to said Merrick's barn, and that is the meaning of the word rubble."

The judge instructed the jury that this written contract "was to be received and treated by them as an unsigned contract or memorandum merely, and that, in ascertaining the contract between the defendants and the said Samuel F Merrick, they might take either the recollections of the defendants' witnesses or the plaintiff's witnesses, and, in determining which were correct in their testimony, might take into consideration this memorandum."

"For the purpose of showing that Samuel F. Merrick was authorized to sell the stone to the defendants, as the general agent of the plaintiff, the defendants were allowed to offer evidence that he had managed the farm of the plaintiff on whicn these quarries were situated; that his management had consisted in working the farm, in selling the produce, such as the hay, butter and eggs, and in one instance a steer from the cattle on the farm, and in letting a small tenement on the farm. The

plaintiff denied that her husband had exercised any control in the management of the farm, and offered evidence tending to show that she, as well as himself, had sold the produce of the farm; that she had made all contracts relating to the cutting of the wood and timber and repairing the buildings on the farm; that she had collected the rents of the tenement; that no stone had been quarried from the farm since she became the owner of it, and that the largest portion of the stone taken by the defendants was taken from quarries newly opened by them; that her husband had only assisted her from time to time, as she needed his assistance, and that she had never appointed him as her agent. She further testified that she was willing to sell the stone for a proper consideration, but had not been asked; and that she had left the matter of the quarries mostly to her husband. It was also in evidence that the premises had been owned and occupied by said Samuel F. Merrick for many years, until 1862, when they were conveyed by him to a brother of the plaintiff by a deed recorded, and, soon after conveyance to said brother, were by him conveyed to said plaintiff by a deed never recorded; that said plaintiff and husband had always since occupied the premises, and none of the defendants ever knew or heard of any change in the ownership or use of said farm.

" Upon this evidence, the plaintiff requested the judge to instruct the jury that there was not to be inferred from the fact, if believed by the jury, that the plaintiff's husband had the general management of this farm, any authority in him to permit the defendants to quarry and remove the stone belonging to the plaintiff. This request the judge refused, but did instruct the jury that a previous authority to give such an express oral license, by the plaintiff to her husband, may be inferred by the jury from the conjugal relations of the plaintiff and her husband, taken in connection with the circumstances under which she acquired title to her land, the functions which her husband with her knowledge and consent exercised in the management of her land, in disposing of its crops and products, management of its tenements, &c., and advising, directing and controlling the same, provided it was within the scope of these functions

as understood between them, to dispose of the stone in these quarries, and the privilege to quarry and carry away stone thence as commercial products of the farm, whenever the same could be done advantageously and profitably to the plaintiff."

It was not contended by the defendants that the plaintiff was present when the parol agreement was made between them and her husband, nor that it was made known to her; but they offered evidence tending to show that she was present and knew the substance of the written contract at the time of its execution. The plaintiff, however, and her husband, both "denied that she had any knowledge of the contents or purport of the written contract, or that she knew whether the stone was taken from the quarries on her own land or her husband's, until after the defendants began to open new quarries on her land."

"The plaintiff asked the judge to instruct the jury that there was no evidence of her assenting to the written contract, or any other, to remove this stone, from the fact that she saw it, from time to time, carried by her door; and also that her assent to the removal of this stone could not be implied from any knowledge of the written contract. The judge declined to give this instruction, but did instruct the jury as follows: If the plaintiff's husband undertook, without any previous authority, to give such an express license in words, reduced to the form of a written contract, in his own name, and the plaintiff, being notified of that fact and the full effect upon the land and the quarries, allowed the defendants to act upon such license, in relation to the land and quarries, without interruption and objection thereto within a reasonable time, the jury would be authorized to infer that she ratified a license commensurate with the terms of such express license, giving to such license the effect only of evidence of a parol license of the same terms. And he further instructed the jury that, irrespectively of any express license by the plaintiff, or by her authorized agent, through a previous authority for or ratification of his acts on her behalf, the defendants might acquire an implied license by such conduct and acts of the plaintiff and defendants in relation to each other, which were known to both of them, as indicated that the defendants,

acting for successive weeks and months under a supposition that they had such a license, proceeded upon the plaintiff's land and quarried and carried away stone therefrom, with the plaintiff's full knowledge of the supposition of the defendants and their acts under it, and without any objection on her part.

" The quarries on the plaintiff's lot were partly open, and partly unopened, and covered with earth. There was evidence tending to show that a portion of the unopened and covered quarries were, by the agreement between Samuel F. Merrick and the defendants, reserved and not to be worked unless it should be found necessary by the defendants and their agents; and that most of the stone taken by the defendants was quarried from this reserved tract, while a considerable quantity of stone, suitable for the purposes of the defendants, still remained in the open quarries.

" The plaintiff asked the judge to rule that if the jury believed that the license given to these parties was embodied in the written memorandum put into the case, and that there was any reserved stone on the lot, the defendants were not authorized to quarry and make use of this reserved stone until they had exhausted the open quarries of building stones like those in Merrick's barn. This ruling the judge declined to give, except so far as the same was given in the following instruction : The questions for the jury are, whether the defendants had such a license, and acted within it. If the defendants had a license derived in any of the modes indicated, they must prove by the preponderance of their evidence, and upon the whole evidence, that their acts were within the scope of their license. Whatever of their acts were in excess of their rights under their license were in violation of the plaintiff's rights; and, so far as they were injurious to her, she is entitled to recover indemnity for such injury."

The jury found for the defendants; and the plaintiff alleged exceptions.

*N. A. Leonard,* for the plaintiff.

*M. P. Knowlton,* for the defendants.

GRAY, J.    The court is of opinion that the plaintiff shows **no** just ground of exception to any of the rulings or instructions of the judge before whom the trial was had.

The defendants, being sued in tort for entering upon the plaintiff's land and quarrying and removing stone therefrom, set up in their justification license from the plaintiff herself and from her husband as her agent.    They offered in evidence an agreement under seal, containing a license to them, but executed by the husband in his own name, and which was excluded on the plaintiff's motion as not binding upon her.    The defendants were then permitted, against the plaintiff's objection, to prove the oral agreement made between them and the husband.    We are not prepared to say that an instrument under seal, executed by an agent in such a manner as to bind him personally and not his principal, and ruled out of the case upon the principal's objection, prevents the other party from proving an earlier oral agreement upon the same subject, made by the agent within the scope of his authority, though different from the written contract.

But it is unnecessary to express a positive judgment upon that question ; inasmuch as we are of opinion that in this case the terms of the oral contract of which evidence was permitted to be given did not differ in legal effect from those of the writing. The testimony introduced by the defendants was, that, by their oral agreement with the plaintiff's husband, they were allowed to quarry the stone, " wherever they pleased," on the whole lot of the plaintiff, and were to pay for such license the sum of one hundred and twenty-five dollars.    By the writing, it was stipulated that, if the defendants should " find it necessary to take any stone which the said Merrick" (the husband) " has designated as specially reserved," they should pay the sum of twenty-five dollars, in addition to the sum of one hundred dollars previously agreed to be paid in any event.    The defendants were thus made the only judges of the necessity of taking any of the stone designated as specially reserved, and had by the terms of the written, as by those of the oral license, the righ at their own election to take stone from any part of the lot, in consider-

ation of the gross sum of one hundred and twenty-five dollars. The memorandum added below the signatures to the writing clearly referred to the style of the wall of the barn previously built, only for the purpose of explaining the meaning of the word "rubble," and not of limiting the place from which the stone might be taken. Even if, therefore, the oral evidence was wrongly admitted, yet, as it did not vary the legal effect of the writing, the plaintiff was not injured by its admission. *Critten-den* v. *Field*, 8 Gray, 621. *Smith* v. *Faulkner*, 12 Gray, 251.

The defendants introduced evidence that the farm on which the quarries were had been conveyed by the plaintiff's husband to her brother and by the latter to her, that she and her husband together had since occupied the premises, and that he managed the farm, sold the hay, butter and eggs, and let a tenement thereon; and the plaintiff herself testified that "she had left the matter of the quarries mostly to her husband." This evidence warranted the jury in finding that it was within the scope of his agency, as understood between him and his wife, to dispose of the stone and of the privilege to quarry and remove it; and was submitted to the jury with suitable instructions. The conjugal relation of the parties was only treated as one element, to be considered in connection with the other facts proved.

Evidence that the plaintiff saw the stone (which was quarried within fifty rods of the dwelling-house) carried by her door from time to time during a year, knowing that the defendants supposed they had a license to do so, was competent evidence of a license from her; and was submitted to the jury under instructions sufficiently favorable to the plaintiff.

*Exceptions overruled.*