# CHARLESTON

CLARKE-LAWRENCE CO. v. CHESAPEAKE & OHIO RY. CO.

Submitted January 14, 1908.   Decided January 28, 1908.

1. CARRIERS—*Loss of Freight—Action by Consignee—Defenses.*
   A rejected compromise proposition, made to a consignee of goods, by a person to whom they have been wrongfully delivered by the

carrier, for the purchase thereof and payment of a profit on the same, neither bars an action against the carrier for breach of its contract, nor works a mitigation of the damages. (pp. 426, 427.)

2.  SAME—*Demand for Goods.*

Demand for goods, wrongfully delivered by a common carrier, is not a prerequisite to the maintenance of an action for breach of the contract. (p. 427.)

3.  SAME—*Limiting Liability.*

A contract, limiting the liability of a common carrier to a certain amount in case of loss of, or injury to, the goods, in consideration of a reduced freight rate, does not limit the recovery in case of a delivery of the property to wrong person, since a wrongful delivery is deemed not to have been within the contemplation of the parties. (pp. 427, 428.)

4.  SAME—*Damages—"Conversions."*

A wrongful delivery by a common carrier is technically a conversion of the goods, and the measure of damages is the value of the goods at the place stipulated for delivery, and interest thereon from the date on which the delivery should have been made; but, if the goods be reclaimed by the carrier and tendered or delivered to the consignee, or the proceeds thereof paid to him, such tender, delivery or payment will mitigate the damages. (p. 428.)

5.  SAME.

If goods, entrusted to a common carrier for shipment, have been sold, in advance of delivery, for use on a special occasion, and in view of peculiar and unusual conditions, at prices yielding profit, and such expected profit is lost by reason of delay in carriage or a wrongful delivery, it is not recoverable as part of the damages, unless the carrier had knowledge of the existence of the contracts or the special purpose for which the goods had been purchased and shipped. (p. 430.)

Error to Circuit Court, Fayette County.

Action by the Clarke-Lawrence Company against the Chesapeake & Ohio Railway Company. Judgment for plaintiff, and defendant brings error.

*Reversed.*

SIMMS & ENSLOW and R. M. BAKER, for plaintiff in error. OSENTON & McPEAK, for defendant in error.

POFFENBARGER, PRESIDENT:

On an agreed statement of facts, in a case carried into the circuit court of Fayette county, by appeal from the judgment of a justice of the peace, a judgment was rendered in favor

of the Clarke-Lawrence Company, against the Chesapeake & Ohio Railway Company, of which the latter complains.

The agreed facts are substantially as follows:  The plaintiff, a wholesale mercantile company, having negotiated sales to its customers of a carload of water melons for their fourth of July trade, in the year 1904, ordered the melons from Meonia Produce Company, of Richmond, Virginia, and they were shipped from that place over the Chesapeake & Ohio Railway, on June 30, 1904, under a consignment to the Clarke-Lawrence Company, at Thurmond, West Virginia. In consideration of a reduced rate, a bill of lading was signed, containing among other stipulations, one limiting the liability of the company to $100.00, for all loss or damage that might occur to the melons from any cause.  The car was promptly started from Richmond and arrived at Hinton on the first day of July, 1904, by a freight train which arrived at Thurmond on the same day.  The Montgomery Supply Company had also ordered a car of melons from the Meonia Produce Company, and, while the car in question here was in transit, and after it had passed Clifton Forge, Virginia, bound westward, T. H. Norman, a representative of the Montgomery Supply Company, applied at Clifton Forge for his car, and was informed by the yardmaster that a car load of melons from the Meonia Produce Company was then on the road between Clifton Forge and Hinton.  Thereupon, the yardmaster at Clifton Forge gave Norman the number and description of that car and wired the yardmaster at Hinton to turn it over to Norman.  Pursuant to these instructions, the car was stopped at Hinton and delivered to Norman who began selling the melons at that place and continued to do so, from place to place, along the line of the railroad, until it reached Thurmond, when he had disposed of about 150 melons.  He arrived at Thurmond with the car on Sunday, the third day of July, and on the same day, a representative of the Clarke-Lawrence Company examined the car and found that it was the one which had been consigned to that company, and not the car intended for the Montgomery Supply Company.  Thereupon, Norman offered to pay Clarke, the representative of the Clarke-Lawrence Company, the sum of $50.00 and take the car off of his hands, which proposition Clarke declined, saying he had contracted the sale of

the melons at a profit greater than $50.00, and would make more than that out of the railroad company. On the next day, Norman had another conversation with Clarke in which he stated the circumstances under which he had obtained possession of the car and offered to pay Clarke $40.00 and take it off of his hands, which proposition also Clarke declined. On the 5th day of July, it was agreed, between the Clarke-Lawrence Company and a division superintendant of the railway company, that the former should take charge of the car and sell the melons to the best advantage for the railway company, which was done and the sum of $155.13 realized, which was $104.87 less than the cost of the car and expenses of sale. The Clarke-Lawrence Company suffered a loss of profits which it would have realized on the transaction, if it had received the car in time to comply with its contracts of sale, amounting to $182.00, which, added to the $104.87, above mentioned, made its total loss $286.87, the amount of the judgment rendered.

The assignments of error are predicated upon the following proposition: First, that the plaintiff could have disposed of the melons at a profit, $50.00, by accepting the proposition of the Montgomery Supply Company; second, no demand was made upon the railway company for the property and delivery thereof was not refused; third, as the shipment had been made under a contract limiting liability, profits which would have been made on sales were not recoverable as damages, since such damages were special and the carrier had had no notice of the special purpose for which the shipment was intended; and fourth, in view of the limitation clause, no more than $100.00 was recoverable.

In response to the first proposition, it is to be observed that there was no tender of the property by the railway company, accompanied by an offer of $50.00 for profit on the car. The car was on the tracks of the carrier company, but as containing property of the Montgomery Supply Company, and had been so carried from place to place. The carriage had been for and on account of that company and the contents treated as its property. That company, after having disposed of a considerable portion of the property, attempted to effect a compromise with the real owner thereof, by purchase of what remained and payment for what had been sold,

so as to make the owner whole and give a profit. The proposition was one of purchase, which the consignee was under no duty to accept, not one of compliance with, or fulfillment of, the contract of carriage. If we could say, in view of the situation of the parties and all the circumstances, the railway company was a party to the offer or had procured the making thereof, it would still be merely a rejected offer of compromise, signifying nothing, and binding nobody. The tender of delivery, if any, embraced in the proposition, was a qualified, or conditional, one.

That no demand for the property was made is immaterial. A wrongful delivery by a common carrier amounts in law to a conversion. It is not a mere withholding of possession, which cannot be treated as a conversion until after demand made. The carrier had not only refused delivery to the consignee, but parted with the possession of the property as well. Under such circumstances, no demand is necessary. The breach of the contract was complete without it. *Peebles* v. *Boston &c. R. R. Co.*, 112 Mass. 498; *Wiggin* v. *Boston &c. R. R. Co.*, 120 Mass. 201; *Missouri Pacific Ry. Co.* v. *Heidenheimer*, 82 Tex. 195; *Railrood Co.* v. *O'Donnell*, 49 O. St. 489; *L. & N. R. R. Co.* v. *Meyer*, 78 Ala. 597.

We deem it unnecessary to inquire whether plaintiff refused to accept the car after it had been re-delivered to the railway company. Such refusal would not have been barred the right of action for the breach of contract on the part of the carrier. Tender of delivery by the railway company and refusal to accept on the part of the plaintiff could have operated nothing more than mitigation of the damages. Had the property been tendered and accepted in its damaged condition, an action for damages might still have been maintained. This is made apparent by the terms of the rule laid down by the courts for determining the amount of damages to be assessed in such case. Hutchinson on Carriers, section 1362, says: "Where the goods have not been lost or destroyed during the transportation, but are delivered in a depreciated condition attributable to causes for which the carrier is responsible, the measure of damages is the difference, after deducting the cost of transportation, between their value as actually delivered and as they should have been delivered,

with interest, and with such other damages as have naturally and proximately resulted from the injury. Under the latter head, the owner would be entitled to recover for reasonable expenses in seeking to reclaim the goods, or in restoring them to their former condition, or endeavoring to reduce the loss to the lowest amount." This text is well sustained by the cases cited in support thereof. Although there was a technical conversion in this case, it finally resulted in a partial loss of the goods, the carrier having reclaimed a large portion of the car, and, if the same was, for the purpose of the present inquiry, tendered to the consignee, such tender, under the principles above stated, operated only to mitigate the damages, not to bar the right of action for the breach of the contract; and refusal to accept could not have barred the right of action or prevented recovery of damages. "Where the delivery is merely at the wrong destination, and the owner ultimately receives his goods, the measure of damages is the same as in cases of delay, with necessary expenses added." 5 Am. Eng. Ency. Law 390. Receipt of the proceeds of sale of goods wrongfully delivered is no bar to an action for damages for the wrongful delivery. *Arrington* v. *W. & W. R. R. Co.*, 6 Jones L. (N. C.) 68. To the same effect, see *Rosenfield* v. *Express Co.*, 1 Woods (U. S.) 131. The refusal could be no broader in its scope and legal effect than tender of delivery itself.

The stipulation for a limited liability has no application here. A wrongful delivery was not anticipated by the parties, and cannot, therefore, be within the stipulation. Both the shipper and carrier contemplated carriage of the goods to the place of destination and delivery thereof to the consignee in good order and condition, provided they should not be lost or injured in transit by some accident or adventitious cause. As such loss or damage only was within the contemplation of the parties, the stipulation was clearly not intended to have any application in the case of a delivery to the wrong person. Affirmative wrongful acts are not within the limitation. *Magnin* v. *Dinsmore*, 70 N. Y. 410; *Chicago &c. Ry. Co.* v. *Fifth Nat'l Bank*, 26 Ind. App. 600; Hucth. Car., section 478.

As the court, in its finding and judgment, adopted an erroneous measure of damages, however, the judgment will

have to be reversed. It is agreed that sales of the property had been negotiated for the fourth of July trade, and that failure to make deliveries in time for that trade would release the vendees, leaving the goods in the hands of the plaintiff and depriving it of the advantages of these contracts; but it is not stated that the railway company had any knowledge of these facts. As the damages resulting from the loss of profits secured by these particular contracts of sale were special in character, no recovery thereof could be had in the absence of a disclosure of knowledge on the part of the railway company of the necessity of delivery in time to enable the consignee to comply with its contracts. "If an article is intended for use in business at destination, and the carrier unreasonably delays its transportation, the owner cannot recover for the loss of its use during the delay, or the profits which he would thereby have made if it had been seasonably delivered, unless he alleges and proves that the carrier, at the time the contract for its transportation was made, was informed of the special use to which it was to be put. And proof that the carrier had knowledge of the general use to which the article was to be put will not be sufficient to charge him with liability for loss of its use or the profits which would thereby have been made. The special circumstances of the case requiring care or expedition must have brought to his attention in such a way that his acceptance of the article, under the circumstances, could fairly be said to amount to an assumption of the risks which naturally and proximately would flow from his default." Hutch. Car. section 1369. "The carrier will not be liable for profits lost by reason of failure to perform a special contract, or on account of other special circumstances not apparent from the transaction itself, unless he has notice of the facts which caused the loss." 6 Cyc. 450; see also same volume, p. 529. "The purpose for which the goods were shipped is immaterial, and cannot affect the measure of recovery one way or the other, with the exception that special circumstances may be shown by the shipper or consignee where it appears that the carrier was informed of them at the time of the shipment." 5 Am. & Eng. Ency. Law 382.

The measure of damages was the value of the goods at the place of delivery, under ordinary conditions and circum-

stances, not in view of the particular purpose for which they had been ordered, nor of the peculiar conditions existing at that place on the day on which the arrival thereof was expected. It is insisted in the brief that the agreed statement of facts brings the case within this rule, because it shows that sales of the goods had been already effected by contracts which secured to the plaintiff all the profits allowed as part of the damages; but this is an erroneous and fallacious view. Those contracts were made in view of the trade on a particular day or occassion, and, for all the court can see, or know, were based largely upon anticipated sales to be made at celebrations, picnics and other gatherings peculiar to the holiday. As it was a national holiday, it may well be assumed that the railway company officials and employes knew that this shipment bore some relation to, or was in some sense founded upon, these holiday celebrations, but it cannot be assumed that they knew or had any means of knowing to what extent the shipment was connected with them or had any knowledge of the existence of the special contracts or of the amount of profit to be secured to the consignee by those contracts.

Including the freight, the melons had cost the plaintiff $210.00. From sales of those remaing in the car, when received, it realized $155.13, but expended $50.00 in effecting the sales. As only part of the melons were received and sold, the amount realized cannot be regarded as equal to the value of the car. Though the $50.00 does not represent expenses incurred in reclaiming the goods, it does represent expenses incurred at the instance and request of the defendant and is, therefore, recoverable, but stands on the agreement, a sort of independent footing. The only evidence found in the record, other than that of the contracts of sale made, that tends to show the value of the car at the place of delivery, under ordinary conditions and independently of any contemplated special or particular use of the goods, is the offer of profit on the melons, involved in the propositions of purchase, made by the Montgomery Supply Company. In the first of these the element of profit was $50.00 and in the last $40.00. In view of the principles stated and the facts disclosed, we think the damage should have been assessed at $144.87 and the judgment rendered

accordingly, including interest from the fourth day of July, 1904, until May 19, 1906, when the judgment in question was rendered, but without costs to the appellant in the circuit court, since there was no tender, before the trial, or an equal or greater amount, as provided in section 171 of chapter 32 of the Code.

Judgment will, therefore, be rendered here for the sum of $161.17, with legal interest thereon from the 19th day of May, 1906, until paid. But costs in this Court will be adjudged to the plaintiff in error, the party substantially prevailing, the recovery having been reduced more than $100.00.

*Reversed.*