JOHN M. FORBES & others *vs.* BOSTON AND LOWELL
RAILROAD COMPANY.
SAME *vs.* FITCHBURG RAILROAD COMPANY.

Suffolk.  March 15, 16. — June 29, 1882.  ENDICOTT & DEVENS, JJ., absent.

The transfer and delivery of an inland bill of lading of goods, by the consignee
to a person who advances money upon them, is not in form or effect a mort-
gage, but vests in such person a property in the goods, which entitles him to
maintain an action against one who wrongfully converts them.

A delivery of an inland bill of lading for a valuable consideration is in law the
delivery of the property itself; and it is not necessary for the person to whom
it is delivered to take possession of the property upon its arrival, or to give
notice to the carrier or warehouseman who has the actual possession of the
property.

The delivery of goods by a common carrier to a person unauthorized to receive
them, without requiring the production of the bill of lading, but relying upon
his representation that he is the holder of it, is a conversion, for which an
action will lie against the carrier by the person entitled to the possession of
the goods, without regard to the question of the carrier's due care or negli-
gence.

If a usage exists for railroad corporations in a certain city to deliver to a con-
signee goods consigned to him by a bill of lading, not containing the words "or
order," without requiring the production of the bill of lading, such a delivery
is good as against a person to whom the consignee has previously delivered the
bill of lading as security for an advance made by him to the consignee.

In an action against a common carrier for the conversion of goods delivered to
a person unauthorized to receive them, who pays the freight upon them, the
measure of damages is the market value of the goods, less the freight, with
interest from the date of the conversion.

By the usual course of business in forwarding grain from C. to B., it is sent by
water from C. to an intermediate point, and is thence taken by railroad to B.
A bill of lading is given at C., making the grain deliverable to the shipper at
the intermediate point, and there a railroad receipt is given, with a memoran-
dum upon it showing that the grain was received from a vessel and that a
bill of lading is outstanding.  The bill of lading is regarded as transferring the
property, and is alone used in procuring the goods from the carrier at B. *Held,*
that the bill of lading is the representative of the grain during the whole of the
transit from C. to B.

The owners of grain stored, according to the usual course of business, in an ele-
vator of the railroad corporation transporting it, are tenants in common in pro-
portion to their respective interests; and a delivery by the corporation of the
quantity of grain belonging to one of such owners to a person unauthorized to
receive it, is a conversion, for which an action of tort in the nature of trover
will lie by the owner against the corporation.

MORTON, C. J.  The first case is an action of tort, containing
a count for the conversion of a quantity of corn and a count for

the conversion of a quantity of wheat. As different considerations apply to the two counts, they must be treated separately.

On or about October 20, 1879, Gallup, Clark and Company, grain-dealers in Chicago, in response to an order from Foster and Company, forwarded to Boston fifty carloads of corn, by the National Despatch Fast Freight Line, which is an association of several railroad companies, whose roads make a continuous line from Chicago to Boston, the defendant's road being a part of the line. Upon the shipping of the corn, an inland bill of lading was issued, by which it was consigned to the order of Gallup, Clark and Company, at Boston. Gallup, Clark and Company drew a draft upon Foster and Company for the price of the corn, attached to it the bill of lading, and forwarded both to the Tremont National Bank of Boston. On October 24, 1879, Foster and Company paid to the bank the amount of the draft, and the draft and bill of lading were delivered to them. Immediately upon obtaining the draft and bill of lading, Foster and Company indorsed them to the plaintiffs, as security for an advance then made by the plaintiffs to the full amount of the draft, and they have held them ever since. The corn mentioned in the bill of lading was received and transported by the defendant, arriving in Boston on October 30, 1879. It remained in its cars until December 12, 1879, when by the orders of Foster and Company it was shipped on board a vessel for Cork, and exported to Ireland. Foster and Company did not produce and present to the defendant the bill of lading, but represented that it was in their possession.

Upon these facts, it is too clear to admit of any doubt, that, by the transfer of the draft and bill of lading by Foster and Company to the plaintiffs, the title and property in the corn passed to them. The bill of lading, though not strictly a negotiable instrument like a bill of exchange, was the representative of the property itself; it was the means by which the property was put under the power and control of the plaintiffs, and the delivery of it was for most purposes equivalent to an actual delivery of the property itself.

The transaction between Foster and Company and the plaintiffs was not in form or in effect a mortgage, so that, as contended by the defendant, it must be recorded in order to have

validity; it was a transfer and delivery of the property. The clear intent of the parties was that the property in the corn should pass to the plaintiffs as security for the advance made by them. Whether they took an absolute title with a liability to account for the proceeds, or a title as pledgees, is not material, as all the authorities show that they took either a general or a special property in the corn, which entitles them to recover of any one who wrongfully converts it. *De Wolf* v. *Gardner*, 12 Cush. 19. *Cairo National Bank* v. *Crocker*, 111 Mass. 163. *Green Bay National Bank* v. *Dearborn*, 115 Mass. 219. *Chicago National Bank* v. *Bayley*, 115 Mass. 228. *Hathaway* v. *Haynes*, 124 Mass. 311. *Gibson* v. *Stevens*, 8 How. 384. *Dows* v. *National Exchange Bank*, 91 U. S. 618. Numerous other cases might be cited. The delivery of the bill of lading was in law the delivery of the property itself, and it was not necessary that the plaintiffs should take immediate possession of it upon its arrival, or that they should give notice to the carrier or warehouseman who held the property. *Farmers & Mechanics' National Bank* v. *Logan*, 74 N. Y. 568. *The Thames*, 14 Wall. 98. *Meyerstein* v. *Barber*, L. R. 2 C. P. 38, 661, and L. R. 4 H. L. 317. It is true that the plaintiffs might by their subsequent laches defeat their right to assert their title. If they permitted the property to remain under the control of their assignors, and held them out to the world as having the right to deal with the property, they might be estopped from setting up their title. But the authorities are decisive to the point that, by the transfer from Foster and Company, they took a title as purchasers of the corn which entitles them to maintain this action, unless they have lost the right by their laches, upon proving a conversion by the defendant.

The next question is whether there was a conversion by the defendant. It is settled that any mis-delivery of property by a carrier or warehouseman to a person unauthorized by the owner or person to whom the carrier or warehouseman is bound by his contract to deliver it, is of itself a conversion, which renders the bailee liable in an action of tort in the nature of trover, without regard to the question of his due care or negligence. *Hall* v. *Boston & Worcester Railroad*, 14 Allen, 439. By the bill of lading, and by the way-bill which was sent to the defendant in

the place of a duplicate bill of lading, the corn was to be delivered to the order of Gallup, Clark and Company. The defendant contracted to deliver it to such person as Gallup, Clark and Company should order, and could not without violating its contract deliver it to any other person. By delivering it to Foster and Company, therefore, the defendant became liable for a conversion, unless it shows some valid excuse. *Newcomb* v. *Boston & Lowell Railroad*, 115 Mass. 230. *Alderman* v. *Eastern Railroad*, 115 Mass. 233. The record before us does not show any laches or any act of the plaintiffs which can excuse or justify this mis-delivery. They did not hold Foster and Company out to the world or to the defendant as one entitled to control the property. Indeed, it is admitted that the defendant did not know, until long after the delivery, that the plaintiffs had any connection with the property, or with Foster and Company. The plaintiffs did nothing to mislead the defendant. They had the right to rely upon the facts that they held the bill of lading, and that, according to the ordinary course of business, the goods could not. be obtained except upon its production. The defendant saw fit to deliver them to Foster and Company without requiring them to produce the bill of lading, relying upon their representation that they were the holders of it. It took the risk of their truthfulness, and cannot now shift that risk npon the plaintiffs, who have done nothing to mislead or deceive the defendant. We are, for these reasons, of opinion that the defendant is liable for the value of the corn described in the first count of the declaration.

In the case of the wheat, there are some facts proved at the trial which lead us to a different result. By the bills of lading and the way-bills, the wheat was consigned to John H. Foster and Company at Boston. The fact that they did not contain the words "or order," or other equivalent words, so as to make them upon the face quasi negotiable, is not important. The bill of lading was yet the representative of the wheat, and its transfer and delivery to the plaintiffs vested in them the title to the property, as against the consignees and their creditors. But the presiding justice of the Superior Court who heard the case has found as a fact, "that it was the custom of the railroads terminating in Boston to deliver to the consignee goods 'billed

straight' as it is termed, that is, billed to a particular person, not to order, when they were satisfied of the identity of the consignee, without requiring the production of the bills of lading, and to rely upon the way-bills to determine the consignee and the form of the consignment."

Under this finding, we must assume that the custom existed, and that the plaintiffs knew or ought to have known of it. It materially affects the relations and rights of the parties. Although it does not affect the question of the title of the plaintiffs as against Foster and Company, it qualifies the duties of the defendant as to the delivery of the wheat. It justified the defendant in delivering it to Foster and Company, the consignees, at least at any time before notice that the property had been transferred. Under it, there was no laches in not calling for the bill of lading; and, in thus delivering, there was no violation of any of the terms of its contract, express or implied. Such delivery therefore was not a mis-delivery which would amount to a conversion and render the defendant liable to the plaintiffs. We are therefore of opinion that the defendant is not liable for the value of the wheat sued for.

The only remaining question is as to the amount of the damages the plaintiffs are entitled to recover for the conversion of the corn. As a general rule, the measure of the damages in trover is the market value of the goods converted, with interest from the date of the conversion. This rule is, however, subject to modification when the plaintiff has only a special interest or property in the goods, and is not answerable over to any person for the balance of the value. *Fowler* v. *Gilman*, 13 Met. 267. *Briggs* v. *Boston & Lowell Railroad*, 6 Allen, 246. *Peebles* v. *Boston & Albany Railroad*, 112 Mass. 498.

The object of the law is to give the plaintiff compensation or indemnity for the injury he sustains by the conversion. In the case before us, at the time of the conversion, the goods were subject to a lien for the freight. The only interest which the plaintiffs had in them was their market value less the freight. This interest was not increased by the fact that the plaintiffs and Foster and Company had agreed, as between themselves, that the latter should pay the freight. The payment by Foster and Company cannot be considered as a payment by the plaintiffs.

It was a payment by themselves, as a part of their scheme of fraud. If the plaintiffs can recover the full value of the corn, they are positive gainers by the fraud, and will receive more than the value of their interest at the time the fraud was committed. Under the circumstances of this case, we are of opinion that it is just and equitable that the reclamation by the defendant from Foster and Company of a part of the proceeds of the fraud should inure to the benefit of the defendant.

Upon the whole case, therefore, the plaintiffs are entitled to recover a sum equal to the market value of the corn described in the first count, less the freight, with interest thereon from the time of the conversion. If the parties cannot agree upon the amount, the case must be sent to an assessor to determine the damages upon this basis.

The controlling facts in the second case are nearly identical with those existing and applicable to the first count in the first case.

By the bills of lading in this case, the grain was shipped by a vessel at Chicago, deliverable to the order of Gallup, Clark and Company at Buffalo. The defendant contends that, upon the arrival of the vessel at Buffalo, the bill of lading became *functus officio*. If this were so, it would not affect the result, because the bill of lading was transferred before the vessel arrived at Buffalo. But it is clear that, upon the facts agreed, the bill of lading remained as the representative of the property, at least until the transit was completed by the arrival at Boston. By the usual course of business in forwarding grain from Chicago to Boston, where the shipment is partly by water and partly by rail, a bill of lading is issued by the vessel at Chicago; the grain is transferred from the vessel to the cars at some intermediate point, usually at Buffalo, and the railroad company issues a receipt similar in form to those issued in this case. This receipt contains a memorandum like the one in this case, " Ex Sch. Gallatin," which indicates " that the grain was received from a vessel arriving at Buffalo from Chicago, and that a bill of lading has been issued by that vessel and is outstanding. The vessel's bill of lading is regarded as transferring the property, and that alone is used in procuring the goods from the carrier." It is clear that

in such cases the parties contemplate a continuous transit from Chicago to Boston, and that the bill of lading is regarded as the representative of the grain during the whole of this transit. So far as any question in this case is concerned, the bills of lading have the same effect as if they had been bills from Chicago to Boston.

Upon the arrival of the grain in question at Boston, a part of it, according to the usual course of business, was stored by the defendant in its elevator, where it was mixed with other grain of a like quality. In such a case, the owner of the grain thus stored is entitled to draw out an equivalent quantity of grain of the same quality, but not to receive the identical grain which he put in. The defendant contends that for this reason an action of tort in the nature of trover cannot be maintained.

It is doubtful whether this ground is open to the defendant, the rule being that, by submitting a case upon an agreed statement of facts, the parties waive any objection to the form of the pleadings not expressly reserved. But if this is otherwise, the objection cannot be sustained. When the grain was put in the elevator, the plaintiffs and the other owners of grain stored therein became tenants in common, in proportion to their respective interests. *Cushing* v. *Breed,* 14 Allen, 376. *Keeler* v. *Goodwin,* 111 Mass. 490. *Dows* v. *National Exchange Bank,* 91 U. S. 618. And a tenant in common of personal property may maintain trover against a stranger who converts the property, or his interest in it. *Bryant* v. *Clifford,* 13 Met. 138. *Goell* v. *Morse,* 126 Mass. 480.

At the time of the delivery to Foster and Company, the plaintiffs were the owners of the grain entitled to the immediate possession. Such delivery was a separation of their grain from the bulk of the grain, and a misappropriation of it, and was a conversion for which the appropriate remedy is an action of tort in the nature of trover.

We are unable to see that this case can be distinguished in principle from the case of *Forbes* v. *Boston & Lowell Railroad,* and the result is, that the plaintiffs are entitled to recover the market value of the grain less the freight, storage and other expenses, with interest from the date of the conversion. If the parties cannot agree upon the amount, the case must be sent to

an assessor to determine the amount of the damages upon this basis.                                     *Judgments accordingly.*

*W. G. Russell & J. B. Warner*, for the plaintiffs.

*J. G. Abbott & S. A. B. Abbott*, for the defendant in the first case.

*E. D. Sohier & C. A. Welch*, for the defendant in the second case.