## MASSACHUSETTS LOAN AND TRUST COMPANY *vs.* FITCHBURG RAILROAD COMPANY.

Suffolk.   Nov. 15, 1886. — Jan. 8, 1887.   HOLMES & GARDNER, JJ., absent.

The holder of a large number of inland bills of lading of corn issued by a railroad corporation, which he had received as collateral security for a loan of money to the consignee, delivered them to the railroad corporation and took from it receipts, which set forth the indorsement of the bills of lading to the pledgee, that notice was to be given to him of the arrival of the corn, and the rate of freight. By the contract of pledge, the consignee agreed to pay the freight. As the corn arrived, the freight was charged to the consignee, and not to the pledgee; and, when delivering the corn, the corporation did not insist upon its lien for freight. The pledgee at one time gave the consignee an order

on the railroad corporation for a portion of the corn, which stated that the consignee was to pay all charges of shipment. The consignee at another time obtained all the corn then in the possession of the railroad corporation by means of false representations, and, to facilitate the obtaining of the corn, paid the freight on the same. *Held*, in an action by the pledgee against the railroad corporation, that the defendant was entitled to deduct the freight from the value of the corn wrongfully delivered by it.

CONTRACT to recover the value of certain corn.

The case was submitted to the Superior Court, upon an agreed statement of facts, and upon certain other facts put in evidence, and found by *Pitman*, J., and was as follows:

John H. Foster and Company, a firm doing business in Boston as dealers in and shippers of grain, borrowed of the plaintiff, between January 1 and May 13, 1880, large sums of money, and gave, as collateral security therefor, bills of lading of corn, to arrive by the defendant's railroad. Foster and Company agreed with the plaintiff to pay the freight charges on said corn.

Upon the receipt of said bills of lading, the plaintiff surrendered them to the defendant company, and received therefor receipts of the defendant company of different dates, but all in the same general form, and which contained the following, after a statement of the receipt of the bills of lading: " Consigned to J. H. Foster & Co., Cork, for orders, and indorsed by them to Massachusetts Loan and Trust Co., to whom notice of arrival is to be sent. Rate 42½ cts. per 100 lbs. to Boston. $294.60 adv. charges. Wgt. 429,450 lbs."

Foster and Company failed on May 14, 1880, owing the plaintiff a large sum of money, for which it held, as collateral security, said receipts for a large amount of corn.

During the months of April and May, prior to May 14, the plaintiff delivered to the defendant written orders for a portion of this corn. On said May 14, and again on May 19, the plaintiff demanded the delivery of the balance of said corn of the defendant, when it appeared that the defendant had delivered a portion of it upon the orders of Foster and Company, without the knowledge and consent of the plaintiff, and without calling for said receipts, and without any orders from it, said delivery having been made while Foster and Company were in good general credit.

Since the bringing of this action, the plaintiff and the defendant have agreed that the value of said corn in Boston on May 14, 1880, was fifty-three cents per bushel, freight and elevator charges all paid.

The defendant, on October 14, 1881, paid the plaintiff the value of the corn erroneously delivered, deducting, however, the freight charges upon the same, and the sum of $836.98, elevator charges.

The plaintiff also demanded the sum which the defendant withheld from said fifty-three cents per bushel as freight charges, or so much thereof as might be sufficient to pay the plaintiff the amount due it from Foster and Company, made up to date with interest.

There was evidence that the plaintiff had receipts for two hundred and sixty-four car-loads of corn.

On April 21, 1880, the plaintiff sent an order for thirty-six car-loads to the defendant, as follows : " Please deliver to John H. Foster & Co., upon payment of all charges for shipment, ex S. S. Iberian (16,678) sixteen thousand six hundred and seventy-eight bushels corn."

The freight charges on said thirty-six car-loads were charged by the defendant to Foster and Company, and were paid by them.

The defendant was not authorized by the plaintiff to deliver said corn to Foster and Company, except upon receipt of written orders from the plaintiff.

The amount of said corn erroneously delivered by the defendant to Foster and Company, without orders from the plaintiff, was one hundred and fifty-two car-loads, containing seventy-two thousand three hundred and eleven bushels of corn. This corn was obtained from the defendant by Foster and Company by false statements to the defendant, to the effect that the bills of lading covering the corn delivered had been sent to the defendant.

The defendant, relying upon the statements of Foster and Company, did not require them to produce receipts or orders from the plaintiff, as it properly should have done.

Prior to May 14, 1880, the plaintiff had not been charged with, nor had it paid, any freight or elevator charges on any of said two hundred and sixty-four car-loads, and no bills for such

charges had been sent to the plaintiff by the defendant; and no demand for charges of any kind had been made by the defendant upon the plaintiff on account of said corn; and no contract had been entered into between the plaintiff and the defendant in regard to freight or elevator charges on said corn, unless such a contract is contained in the written receipts above mentioned.

The freight charges consisted of the charge which each railroad, forming part of the line by which the grain came, made for the haulage over its own line. These were accumulated together; then the defendant added its own part, and then added its charge for passing it through its elevator when it went on board ship.

The freight charges on all the one hundred and fifty-two car-loads erroneously delivered by the defendant to Foster and Company without orders, were paid the defendant by Foster and Company before the time of their failure, May 14, except upon eleven car-loads; and the judge found that, although Foster and Company were legally bound to pay said freight, yet that the freight was so paid by them to facilitate the obtaining of said corn.

The bills made out by the defendant for freight charges, called "expense bills," were made out to Foster and Company, and, when paid by Foster and Company, were receipted by the defendant and given to them. They showed the freight charges against each particular car-load. The receipted expense bills paid by Foster and Company on the one hundred and forty-one car-loads of corn in question were obtained by the plaintiff of Foster and Company after their failure, and were given up to the defendant prior to the settlement of October 14, 1881. The freight charges paid by Foster and Company on the one hundred and forty-one car-loads of the corn erroneously delivered by the defendant amounted to upwards of $12,000. The freight charges on the eleven car-loads erroneously delivered to Foster and Company, and not paid by them, were paid by the plaintiff some time after May 14, 1880, and amounted to a little over $1500. The defendant kept a general running account with Foster and Company, in which all freight charges against them were entered. Among the charges so made to Foster and Com-

pany were the freight charges on all the corn delivered prior to May 14, 1880, including said one hundred and fifty-two car-loads erroneously delivered. From time to time Foster and Company made payments, but after October 9, 1879, were always in arrears. The defendant could not get Foster and Company to settle in full.

As payments were made by Foster and Company, they were applied by the defendant to such charges as it saw fit. Expense bills, showing the charges against each car-load in detail, were made out by the defendant, and from time to time sent to Foster and Company, and certain of these were receipted when payments were made by Foster and Company.

At the time of their failure Foster and Company were owing the defendant for freight charges a balance of $3037.98. This included charges on grain pledged to parties other than the plaintiff, as well as some on that pledged to the plaintiff.

The freight was all charged to Foster and Company when the corn arrived, or as soon after as could conveniently be done, and the defendant got its pay from Foster and Company as best it could, it being difficult at times to get money from them.

The defendant did not usually insist upon the payment of the freight charges before it delivered corn to Foster and Company; and did not insist upon its lien for freight upon said one hundred and fifty-two car-loads of corn erroneously delivered to Foster and Company when it delivered them.

At the time of the partial settlement between the plaintiff and the defendant, October 14, 1881, already mentioned, the following receipt was given by the plaintiff to the defendant, and the amount of money mentioned in said receipt was paid by the defendant to the plaintiff, and received on the terms therein stated: "Received of Fitchburg Railroad Company $28,485.78, as the value of 72,311 bushels of corn short delivered by said company from the amount transferred to us by John H. Foster & Co., less freight and elevator charges thereon, which we claim to have been already paid by said Foster & Co.; and we agree to prosecute the suit now pending between us and said Railroad Co. only for the recovery of said freight and elevator charges, this payment to in no way prejudice the rights of either party in said freight and charges, — the said Railroad

Company agreeing to execute a satisfactory bond that, in the event we prevail in said suit, said Railroad Company will pay us the full balance of our claim against said Foster & Co. with all costs, charges, and expenses of collection (provided the judgment in our favor shall be for an amount sufficient so to do), and to hold us harmless from the demands of all persons claiming as creditors of, or in any way by, through, or under said Foster & Co. against us."

The amount due the plaintiff from Foster and Company is $3234.69, and interest from August 1, 1881.

The amount of freight and elevator charges deducted and withheld by the defendant, as mentioned in said receipt of October 14, amounted to upwards of $12,000. When Foster and Company failed, May 14, 1880, they were owing the plaintiff about $100,000, which has since been paid, except as to the amount above stated; and at that time, May 14, 1880, they were indebted to the defendant on account of corn improperly taken by them about $70,000, which is still unpaid.

The plaintiff claims judgment against the defendant for only so much of said amount as will be sufficient to pay the plaintiff the amount due it from Foster and Company, made up to date with interest, with its costs, charges, and expenses of collecting the same, the amount to be determined by an assessor, unless agreed upon by the parties.

Upon the foregoing facts, the judge was of opinion that this case could not be distinguished from the case of *Forbes* v. *Boston & Lowell Railroad,* 133 Mass. 154; and that, upon the authority of that case, he was bound to rule against the plaintiff's claim as to allowance for freight; and therefore so ruled, and found for the defendant.

The case was then, by consent of parties, reported to this court for its determination of the question of law involved. If the ruling was right, judgment was to be entered on the finding; otherwise, the case to have such direction as the legal rights of the parties might require.

*M. F. Dickinson, Jr., & H. R. Bailey,* for the plaintiff.

*C. A. Welch,* for the defendant.

DEVENS, J. In *Forbes* v. *Boston & Lowell Railroad,* 133 Mass. 154, a case very similar in its facts to the one at bar, it

was held that, in an action against a common carrier for the conversion of goods delivered to a person unauthorized to receive them, who pays the freight upon them, the measure of damages is the market value of the goods, less the freight, with interest from the date of the conversion. In that case, as in the one before us, it was the duty of the consignees, by virtue of their agreement with the assignees of the bills of lading, to whom the bills had been transferred as collateral security, to pay the freight charges; but it was held that the only interest which the plaintiffs had in the goods was in their market value, less the freight; that this was not increased by their agreement with their consignees; and that such payment by the consignees for the purpose of fraudulently obtaining the goods could not be considered as a payment by the plaintiffs, so as to entitle them to recover the amount thereof, as a part of the value of the goods wrongfully delivered.

That the defendant in the case at bar wrongfully delivered to the consignees one hundred and fifty-two car-loads of the corn, which was the article consigned, without the authority of the plaintiff, who was known to the defendant as the assignee of the bills of lading, is conceded; and the defendant has paid to the plaintiff the market value of these car-loads, deducting from such market value the amount of freight charges thereon, which it has received from the consignees. This payment was made by agreement, without prejudice to the right of the plaintiff to bring this suit, by which it seeks to compel the defendant to pay the freight charges, as a part of the market value of the corn, or so much thereof as is necessary to satisfy the plaintiff's claim as the holder of the bills of lading as collateral security for the debt of the consignees.

The plaintiff seeks to distinguish the case at bar from that already cited on several grounds, which, without following the precise order in which it has urged them, may be briefly stated.

It contends that, in the former case, the railroad had no actual knowledge that any one beside Foster and Company (who were the consignees in that case as in this) was interested in the corn, or had bills of lading thereof, while in this case the railroad knew that the bills of lading had been assigned. But as the bill of lading represents the property itself, in each case the

defendant held the property for him who was the lawful holder of the bill of lading.

It is further suggested, that, in the case at bar, the defendant knew that Foster and Company were bound by their agreement with the plaintiff to pay the freight charges. No such knowledge appears by the facts agreed, or the report of the judge, nor can we infer it therefrom. But, assuming it to be true that the defendant had such knowledge, the agreement of the plaintiff and the consignees could not impose any heavier responsibility upon the defendant for the value of the goods, even if it might require of the defendant, for its own safety, to be vigilant in refusing to part with them until freight was paid.

The plaintiff further urges, that in the former case it did not appear that the railroad charged the freight upon its books to Foster and Company; that the payment there made was simply a part of their scheme fraudulently to obtain the goods; and that the corn there was subject to a lien for freight, while in the case at bar the defendant did not insist on its lien for freight, but erroneously delivered the goods, charging the freight to Foster and Company, and getting its pay as it could. These are distinctions without a difference. Whether the railroad received its pay at once, or charged it to Foster and Company, it was still, when made by Foster and Company, a payment by them, and not by the plaintiff, and relieved the corn from the lien which the defendant had upon it, and which otherwise the plaintiff would be compelled itself to discharge in order to obtain the corn. It was a part of the scheme of Foster and Company to induce the defendant wrongfully to deliver the goods, to arrange a mode of payment of the freight charges satisfactory to it, and it was their payment or arrangement to pay, and not any act of the plaintiff, which caused the defendant to discharge the lien. From this no benefit could result to the plaintiff, nor injury to the defendant, as the right of the plaintiff to the corn was subject to the defendant's lien. "If the plaintiffs can recover the full value of the corn," as remarked by Chief Justice Morton in *Forbes v. Boston & Lowell Railroad, ubi supra,* "they are positive gainers by the fraud, and will receive more than the value of their interest at the time the fraud was committed."

The plaintiff has devoted much of its brief to a reargument of the case of *Forbes* v. *Boston & Lowell Railroad*, and urges that the decision there made should be modified or entirely overruled. That case was so recently and carefully considered that we do not feel called upon to rediscuss it, as we remain satisfied with the principles on which it rests.

*Judgment on the finding.*