(163 App. Div. 366)

HASSAM v. PLATT. (No. 5712.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. CARRIERS (§ 94*) — EXPRESS COMPANIES — TRANSPORTATION OF FREIGHT — WRONGFUL DELIVERY—CONVERSION.

Plaintiff, an artist, residing at 27 West Sixty-Seventh street, New York, having shipped a valuable painting to Colorado for exhibition, the same was delivered by the exhibitor to defendant express company for return to plaintiff, and was delivered at 27 West Twenty-Seventh street, New York, which was one of the entrances of a hotel. It was received by an employé of the hotel and receipted for on plaintiff's behalf, but without plaintiff's knowledge, on June 7, 1905, and remained in the hotel unclaimed for some time thereafter when it was lost; plaintiff having no knowledge of the shipment until April 1, 1906. *Held*, that it was the duty of the carrier to either deliver the picture to plaintiff as consignee, or, in event of its inability to find him, to place the same in a warehouse

for his benefit, and that the facts showed a misdelivery rendering the carrier liable for conversion.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. § 94.*]

2. CARRIERS (§ 94*)—EXPRESS COMPANIES—MISDELIVERY—CLAIM—TIME.
   Where plaintiff had no knowledge of an express company's misdelivery of a valuable picture consigned to him on June 7, 1905, until April 1, 1906, and the consignor was not aware or notified that the shipment had not duly reached plaintiff, who notified the defendant company of his loss and presented a claim therefor not later than May 12, 1906, a provision of the shipping contract requiring claim for loss to be filed within 60 days from date of shipment does not apply.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. § 94.*]

Appeal from Trial Term, New York County.

Action by F. Childe Hassam against Edward T. Platt, as treasurer of the United States Express Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Branch P. Kerfoot, of New York City, for appellant.

Philip Carpenter, of New York City, of counsel (Frank Parker Ufford, of New York City, on the brief), for respondent.

CLARKE, J. [1] This is an action for conversion against an express company. At the close of the case, both sides moved for the direction of a verdict. The court left the question of value to the jury, which found it to be $800. Subsequently, under stipulation, it directed a verdict in favor of the plaintiff for $1,174.93. Defendant appeals.

Plaintiff, an artist, sent a painting, "A Rainy Day in Washington Square," to the Boutwell Brooks Art Company, Denver, Colo., for exhibition. Some time thereafter and on June 3, 1905, the said painting, packed in a box weighing 19 pounds, was delivered by said art company at Denver to the United States Express Company, consigned to the plaintiff in New York. Express charges of $2 were paid thereon. It was stipulated on the trial that said painting was the property of the plaintiff, and that the nature and value thereof was unknown to the defendant; that said shipment was on or about the 7th day of June, 1905, delivered by said express company at No. 27 West Twenty-Seventh street, which was then one of the entrances to the Metropolitan Hotel; that it was received by the clerk or other employé of said hotel and receipted for on the plaintiff's behalf by signing the name "George W. Mott," but without plaintiff's knowledge and consent; that it remained unclaimed in the possession or custody of said hotel for some time thereafter; that until April 1, 1906, the plaintiff was not personally aware that said shipment had ever been made or that the receipt above referred to had been given or accepted, and the consignor was not aware or notified that said shipment had not duly reached the

plaintiff; that said painting has never been delivered to the plaintiff; that no notice of nondelivery or claim of loss was presented to said express company for more than 60 days after date of shipment, but such notice was presented not later than May 12, 1906.

It appeared that plaintiff resided at a studio at 27 West Sixty-Seventh street. He testified that he had never stopped at the Metropolitan Hotel.

Mr. Mott, who signed the receipt, testified that in June, 1905, he was a clerk at the hotel when this picture addressed to Mr. Hassam was received.

"I must have seen the driver of the express wagon; he brought the picture in. I had no conversation with him, except that I told him that the party wasn't there, but it possibly might be somebody coming, and I would receive the picture, and I signed for it. I signed a paper there that he produced. * * * I signed for a box. I don't know what was in it, * * * addressed to Mr. Hassam, yes, sir, 27 West Twenty-Seventh street. I saw the address on the box. * * * I told the driver that Mr. Hassam was not at the hotel. Q. Did you tell him anything as to his being known or unknown there? A. Yes, sir. After I told the driver that Mr. Hassam was not at the hotel, he simply left the box, name so and so, and I signed for it, thinking there possibly may be somebody coming by that name. * * * The Express Company never called for the package while I was there. * * * I was there to May 1, 1906. The hotel went out of business then and was taken down right after that. When I left, the box was behind the desk right where it was put. The contents of the hotel were sold to one man. * * * I do not know Mr. Hassam. After June 7th that package laid behind the desk all the time, kept getting covered up with other goods that would come in and like that. I never sent any notice to the express company that Hassam had not come for it. I never opened the package to look into it, simply left it there for Mr. Hassam to call."

In Price v. Oswego & Syracuse R. R. Co., 50 N. Y. 213, 10 Am. Rep. 475, a fraud was perpetrated upon the plaintiff by a man ordering certain goods to be manufactured and sent to him under a certain name. They were so sent by the railroad company and delivered to a man who presented himself under said name. The defendant railroad company had no knowledge of the fraud and supposed that the person to whom they were delivered was a member of or represented the firm. Grover, J.:

"It is the duty of a carrier to carry the goods to the place of delivery and deliver them to the consignee. When goods are safely conveyed to the place of destination and the consignee is dead, absent, or refuses to receive, or is not known and cannot after reasonable diligence be found, the carrier may be discharged from further responsibility as a carrier by placing them in a proper warehouse for and on account of the owner. Fisk v. Newton, 1 Denio, 45 [43 Am. Dec. 649]. The responsibility continues as carrier until discharged in the manner above stated. Hence a delivery to a wrong person, although upon a forged order, will not exonerate the carrier from responsibility. Powell v. Myers, 26 Wend. 591. In examining the cases, the distinction between the liability of carriers and warehousemen must be kept in mind. The former is responsible as insurer. The latter for proper diligence and care only, in the preservation of the property and its delivery to the true owner. The former must, at their peril, deliver property to the true owner, for if delivery be made to the wrong person, either by an innocent mistake or through fraud of another, they will be responsible, and the wrongful delivery will constitute a conversion. McEntee v. New Jersey Steamboat Co., 45 N. Y. 34 [6 Am. Rep. 28]. It is of the liability of the warehouseman after the responsibility as carrier had terminated that the chief judge is speaking in the opinion in Bur-

nell v. N. Y. C. R. R. Co., 45 N. Y. 184 [6 Am. Rep. 61], where he holds that the defendant was responsible only for due care and diligence."

In Security Trust Co. v. Wells Fargo, 81 App. Div. 426, 80 N. Y. Supp. 830, affirmed on opinion below 178 N. Y. 620, 70 N. E. 1109, a trust company had on deposit certain moneys belonging to one Rachel G. Rice. It received a letter purporting to be signed by her directing the trust company to send to her at Geneseo, N. Y., $500 in currency. The trust company stamped the check purporting to be signed by her, "Paid," and delivered to the express company a package containing the $500 addressed to Rachel C. Rice, Geneseo, N. Y. Upon receipt of the package, the express company's representative made inquiries for the consignee, and, being unable to learn that any one bearing that name lived or was in the vicinity, placed the package in the company's safe. Shortly thereafter a man who claimed to be Frank Rice called at the office of the express company and produced an order for the money ostensibly signed by the consignee. The package of currency was thereupon delivered to him. It subsequently appeared that the letter and check sent to the trust company and the order exhibited to the express company were fictitious, and that the package of currency was not delivered to the consignee. Held that the trust company which had made good the $500 to Mrs. Rice was entitled to recover the $500 from the express company, as the latter's agent, when he delivered the package, knew that he was not delivering it to the consignee, but took the risk that the person purporting to be Frank Rice was the alter ego of the consignee. Spring, J.:

"The strict rules governing the liability of a common carrier for the misdelivery of goods transported by it are not even necessary to be resorted to in this case, for any one who, for a compensation, undertakes to deliver an article to a certain person and then hands it over to one that the deliverer well knows is not the person to whom he agreed to make delivery, is liable. He may not be excused, because, forsooth, he believed the one to whom delivery was made represented the person who was to receive the article. The liability of the common carrier, nevertheless, is the measure to be meted out to the appellant. It received the goods strictly within that capacity and cannot be exonerated until the goods have been delivered to the consignee. 'No obligation of the carrier is more rigorously enforced than that which requires delivery to the proper person.' Furman v. Union Pacific R. R. Co., 106 N. Y. 579, 585, 13 N. E. 587. In McEntee v. New Jersey Steamboat Co., 45 N. Y. 34 at page 37 [6 Am. Rep. 28] the court say: 'Common carriers deliver property at their peril, and must take care that it is delivered to the right person, for if the delivery be to the wrong person, either by an innocent mistake or through fraud of third persons, as upon a forged order, they will be responsible, and the wrongful delivery will be treated as a conversion' "—citing Price v. Oswego & Syracuse R. R., 150 N. Y. 213 [40 Am. Rep. 475]; Pacific Express Co. v. Shearer [160 Ill. 215, 43 N. E. 816], 37 L. R. A. 177 [52 Am. St. Rep. 324]; Hutch v. Carr, §§ 344–349; Lawson, Bailments, § 200.

"The wrongful delivery rendered the appellant liable for conversion. Guillaume v. Hamburg & American Packet Co., 42 N. Y. 212 [1 Am. Rep. 512]; Hawkins v. Hoffman, 6 Hill, 586 [41 Am. Dec. 767].

"In Wait's Law & Practice (volume 1 [7th Ed.] 412) is the following concise statement of the rule: 'If a common carrier delivers goods to the wrong person, although by his own innocent mistake or by his being imposed upon, he is liable to the true owner for the value. The carrier delivers at his peril. He is responsible as an insurer. And a wrongful delivery by him is treated at common law as a conversion of the property.' Nor would it benefit the defendant if the liability were that of a warehouseman or of an involuntary

bailee, for the wrongdoing consisted in the affirmative act of delivering the goods to a person not the consignee. Bank of Oswego v. Doyle, 91 N. Y. 32 [43 Am. Rep. 634]."

[2] It also held that the 90-day clause did not apply. The court said that:

"The claim in this case was not presented until more than two years after the delivery of the package, but it was made promptly upon information of the fraud received by the respondent. This clause follows the clauses defining what constituted the limitation upon its liability, and, as has been stated, not one refers to any restriction of that liability for a delivery to a person other than the consignee. Within the strict construction which is to be applied to stipulations designed to give immunity to a common carrier for the accountability which the law imposes upon it" (citing cases). "In the cases cited, the general language employed was held not to exempt the carrier from responsibility for its negligent acts. The tortious act which renders it amenable to an action for conversion brings the case within the principle adverted to."

In Sonn v. Smith, 57 App. Div. 372, 68 N. Y. Supp. 217, a case of misdelivery, the court said:

"Every bailee is bound, at his peril, to know that the person to whom he delivers the chattel is the proper person to receive it, and if he delivers it to the wrong person, though acting in perfect good faith, he is none the less liable for its conversion."

In Schlesinger & Sons v. N. Y. N. H. & H. R. R. Co., 85 N. Y. Supp. 372, the delivery was at the place to which the shipment was addressed, but not to the consignee. The court held there was no delivery and the carrier was liable. In McCulloch v. McDonald, 91 Ind. 240, the goods were delivered to I. Kling, who had a bakery at the corner of Walnut and Jackson streets. The teamster was given a bill inclosed in a sealed envelope directed to E. Cline. On the envelope were the words "Walnut and Jackson." The court said:

"The flour was directed to E. Cline, and delivered to I. Kling. The names are. unlike, and in this respect the directions were explicit and not misleading. The appellant could not have mistaken the one for the other by reason of any similarity in the names, and the fact that the place of business was misstated did not authorize him to deliver the goods to any other person who might be engaged in business at that point. He was bound to deliver the flour to the consignee or retain it. Nor was he justified in assuming that the appellees had misdirected the flour. In delivering it upon such assumption, he acted at his peril, and must bear the loss."

In Forbes v. Boston & Lowell R. R. Co., 133 Mass. 154, Morton, C. J., said:

"It is settled that any misdelivery of property by a carrier or warehouseman to a person unauthorized by the owner or person to whom the carrier or warehouseman is bound by his contract to deliver it is of itself a conversion, which renders the bailee liable in an action of tort in the nature of trover, without regard to the question of his due care or negligence. Hale v. Boston & Worcester R. R. Co., 14 Allen, 439 [92 Am. Dec. 783]."

In North Pa. R. R. Co. v. Com. Natl. Bank of Chicago, 123 U. S. 727, 8 Sup. Ct. 266, 31 L. Ed. 287, Field, J., said:

"The duty of a common carrier is not merely to carry safely the goods intrusted to him, but also to deliver them to the party designated by the terms of the shipment, or to his order, at the place of destination. There are no

conditions which would release him from this duty, except such as would also release him from the safe carriage of the goods. The undertaking of the carrier to transport goods necessarily includes the duty of delivering them. * * * No obligation of the carrier, whether the freight consists of goods or of live stock, is more strictly enforced. Forbes v. Boston & L. R. R. Co., 133 Mass. 154; McEntee v. New Jersey N. B. Co., 45 N. Y. 34 [6 Am. Rep. 28]. If the consignee is absent from the place of destination, or cannot, after reasonable inquiries, be found, and no one appears to represent him, the carrier may place the goods in a warehouse or store with a responsible person to be kept on account of and at the expense of the owner. He cannot release himself from responsibility by abandoning the goods or turning them over to one not entitled to receive them. Fisk v. Newton, 1 Denio, 45 [43 Am. Dec. 649]"—citing, also, Furman v. U. P. R. Co., 106 N. Y. 579 [13 N. E. 587], and Bank of Comm. v. Bissell, 72 N. Y. 615.

In Wamsley v. Atlas Steamship Co., 168 N. Y. 533, 61 N. E. 896, 85 Am. St. Rep. 699, Werner, J., said:

"The general rule is that a common carrier is not liable in conversion for mere nonfeasance. * * * So on the contrary he may be held in trover when he is guilty of misfeasance, although the wrong may have been unintentional. This principle is thus stated in Hawkins v. Hoffman, 6 Hill, 588 [41 Am. Dec. 767]. 'Trover will lie where goods have been lost to the owner by the act of the carrier, though there may have been no intentional wrong; as when goods are by mistake, or under a forged order delivered to the wrong person. * * *' In Packard v. Getman, 4 Wend. 615 [21 Am. Dec. 166], the Supreme Court said: '* * * Where a carrier loses goods by accident. trover does not lie; but where he is an actor and delivers them to a third person, though by mistake, the action lies. * * *' Following those cases and citing with approval the authorities upon which they are based, this court, in Magnin v. Dinsmore, 70 N. Y. 417, 26 Am. Rep. 608, thus stated the law of conversion as applied to common carriers: 'A conversion implies a wrongful act, a misdelivery, a wrongful disposition or withholding of property.'"

See, also, Elliott on Railroads, §§ 1523, 1526; 6 Cyc. 341, 473; 38 Cyc. 2011.

It seems to me that, upon the foregoing authorities, the judgment appealed from was right and should be affirmed, with costs to the respondent. All concur.